IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| YAAK VALLEY FOREST COUNCIL, | CV 19–143–M–DWM |
| Plaintiff, | |
| vs. | OPINION & ORDER |
| TOM VILSACK, Secretary of Agriculture; UNITED STATES FOREST SERVICE; U.S. FOREST SERVICE, Northern Region; KOOTENAI NATIONAL FOREST; LEANNE MARTEN, Regional Forester, Northern Region; CHAD BENSON, Forest Supervisor, Kootenai National Forest, | |
| Defendants. | |

This case arises out of a dispute over the management of the Pacific

Northwest National Scenic Trail ("the Trail"), a long-distance hiking trail

stretching from Northwestern Montana to the Pacific Ocean, and the parties are

specifically concerned with the 165-mile portion of the Trail that passes through

Montana's Yaak Valley.  The Yaak Valley Forest Council ("Yaak Valley") alleges

that the United States Forest Service violated the National Trails System Act by

failing to issue a comprehensive plan for the Trail.  Both parties seek summary

judgment, and the Forest Service unsuccessfully renews its challenge to Yaak

Valley's standing.  Because the Forest Service concedes that it has not complied

with the comprehensive plan requirements of the National Trials System Act,

summary judgment is granted in favor of Yaak Valley on Claims I and IV.  The

Forest Service is required to prepare a comprehensive plan by December 31, 2023.

Yaak Valley's additional requests for injunctive relief are denied.

## BACKGROUND[1]

In 1968, Congress passed the National Trails System Act "to provide for the

ever-increasing outdoor recreation needs of an expanding population to promote

the preservation of, public access to, travel within, and enjoyment and appreciation

of the open-air, outdoor areas and historic resources of the Nation."  Pub. L. No.

90-543, § 2, 82 Stat. 919, 919 (1968) (codified at 16 U.S.C. § 1241(a)).  The Act

establishes a national system of recreation, scenic, and historic trails.  16 U.S.C.

§ 1242(a).  Relevant here, "scenic trails" are "located as to provide for maximum

outdoor recreation potential and for the conservation and enjoyment of the

nationally significant scenic, historic, natural, or cultural qualities of the areas

through which such trails may pass."  § 1242(a)(2).  Only Congress can designate a

national scenic trail.  § 1244(a).  However, once a trail is designated, the authority

---

[1] Yaak Valley failed to file a Statement of Undisputed Facts that complies with D.
Mont. L.R. 56(a)(1).  As a result, rather than respond to Yaak Valley's Statement
of Undisputed Facts, (Doc. 20-1 at 2), the Forest Service responds to factual
allegations from Yaak Valley's summary judgment briefs since many of Yaak
Valley's factual allegations include no record citation, (*see generally* Doc. 29).

to administer it is generally delegated to the Secretary of Agriculture or Secretary of the Interior. *See generally id.*; § 1246(i).

Within two years of a trail's designation, the appropriate Secretary must submit to Congress "a comprehensive plan for the acquisition, management, development, and use of the trail." § 1244(e). The plan must address

> (1) specific objectives and practices to be observed in the management of the trail, including the identification of all significant natural, historical, and cultural resources to be preserved (along with high potential historic sites and high potential route segments in the case of national historic trails), details of anticipated cooperative agreements to be consummated with other entities, and an identified carrying capacity of the trail and a plan for its implementation;
>
> (2) an acquisition or protection plan, by fiscal year, for all lands to be acquired by fee title or lesser interest, along with detailed explanation of anticipated necessary cooperative agreements for any lands not to be acquired; and
>
> (3) general and site-specific development plans including anticipated costs.

*Id.* While Congress possesses the exclusive authority to designate trails, the Secretary can establish connecting or side trails. § 1245. The Secretary can also relocate trail segments in limited instances, but substantial relocations can only be accomplished by an act of Congress. § 1246(b).

Congress designated the Pacific Northwest National Scenic Trail on March 20, 2009. Omnibus Public Land Management Act of 2009, Pub. L. No. 111-11, § 5205, 123 Stat. 991, 1158 (codified at 16 U.S.C. § 1244(a)(30)). The Trail

consists of "approximately 1,200 miles, extending from the Continental Divide in Glacier National Park, Montana, to the Pacific Ocean Coast in Olympic National Park, Washington" and is administered by the Secretary of Agriculture. *Id.* The Secretary of Agriculture has delegated that authority to the Forest Service. (*See, e.g.*, Doc. 14-1.) Given that the Trail was designated March 9, 2009, a comprehensive plan should have been submitted within two fiscal years of that date. *See* § 1244(e). As discussed below, no comprehensive plan has been submitted to date.

On August 23, 2019, Yaak Valley filed this suit, alleging that the Forest Service violated the National Trails System Act by failing to prepare a comprehensive management plan for the Trail and failing to reissue the charter for the Trail's advisory council. (Doc. 1.) The Forest Service moved to dismiss, (Doc. 13), and its motion was granted in part and denied it in part, (Doc. 17). Over the Forest Service's objection, the Court determined that Yaak Valley had standing to challenge the Forest Service's inaction but concluded that Yaak Valley's advisory council challenge (Claim II) was moot. (*Id.* at 6–8.) Now, Yaak Valley's summary judgment motion asserts three claims: the Forest Service failed to prepare a comprehensive management plan (Claim I); the Forest Service unreasonably relied on the Kootenai National Forest Plan ("the Kootenai Plan") (Claim IV); and the Court should enjoin the promotion of the Trail until a comprehensive plan is in

4

place (Claim V).  There is no "Claim III."  The Forest Service argues that Yaak

Valley lacks standing so the Court should dismiss on jurisdictional grounds and

argues in the alternative that the Court should grant summary judgment in its favor

on the merits.  The Court heard oral argument on September 21, 2021.

## SUMMARY CONCLUSION

This case distills down to a single question: what is the proper remedy for

the Forest Service's failure to comply with the comprehensive plan requirements of

the National Trail Systems Act?  Yaak Valley overstates the potential remedies the

Court may award, while the Forest Service downplays the significance of its nearly

decade-long delay in issuing a comprehensive plan and rehashes unpersuasive

arguments concerning standing.  Under § 706(1) of the Administrative Procedures

Act ("APA"), the Court may order the Forest Service to complete a comprehensive

plan by a date certain, and that date will be consistent with the timeline proposed

by the parties at oral argument: December 31, 2023.  Yaak Valley also requests,

seemingly under § 706(2) of the APA, additional "novel" injunctive relief ranging

from publicization of the Forest Service's mistakes to compelled consultation

under the Endangered Species Act ("ESA") and the National Environmental Policy

Act ("NEPA").  But, as explained in detail below, such relief stretches beyond the

scope of the injury.

**LEGAL STANDARD**

Because the National Trails System Act does not supply its own standard for judicial review, the APA, 5 U.S.C. §§ 706 *et seq.*, governs its review. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). Section 706(1) of the APA "empowers a court . . . to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (internal quotations omitted).  Such a claim may proceed "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.*

Under § 706(2) of the APA, the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  The review is deferential to the agency, and a court should "not [] substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  A decision is arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency." *Id.*  A decision is also arbitrary and capricious if it "is so implausible that it could not be ascribed to

6

a difference in view or the product of agency expertise." *Id.* An agency's action is valid if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id.* (internal quotation marks omitted). Consistent with the court's obligation not to substitute its judgment for that of the agency, an agency's action may only be upheld on "the basis articulated by the agency itself," and the agency must make plain its course of inquiry, analysis, and reasoning. *Id.* at 50.

## ANALYSIS

Despite the Forest Service's protestations to the contrary, Yaak Valley has standing. The Forest Service concedes that there has been a procedural violation, and the evidence included in the administrative record and with the briefing shows that there is a reasonable probability that the Forest Service's violation is causing injury to Yaak Valley. On the merits, the Forest Service concedes that it has failed to comply with the statutory timeline for issuing a comprehensive plan. Such a delay is unreasonable, and under § 706(1) of the APA the Court may impose a deadline for the completion of the comprehensive plan. Further, Yaak Valley seeks relief under § 706(2) of the APA insofar as it argues that the Forest Service's reliance on the Kootenai Plan is arbitrary and capricious. As Yaak Valley acknowledged at the summary judgment hearing, its requested relief is novel. The Forest Service's observation that the Court's equitable powers are not so flexible to

provide all the relief Yaak Valley seeks is well-taken.  As a result, Yaak Valley is awarded injunctive relief only under § 706(1), though this relief may very well result in the fulfilment of several items Yaak Valley requests under § 706(2) once the comprehensive plan is complete.

I.    **Standing**

A.    **Evidence Considered**

As a preliminary matter, the Court must determine whether to consider evidence that Yaak Valley provided for the first time in its combined response and reply.  There, Yaak Valley argues that it satisfies the requirements of standing with "additional specific facts and evidence, that notably make up the available science on this issue, in the form of further declaration from Dr. Mattson."  (Doc. 27 at 9.) The "further declaration" and report from Dr. David Mattson analyzes the effect of trails and trail-use on grizzly bears.  (*See*, *e.g.*, Doc. 27-1 at 25–28, 38–43.)  Yaak Valley presented this additional information as an expansion of "groundbreaking research from Dr. Mattson" that Yaak Valley included in its initial summary judgment briefing; however, the initial summary judgment briefing citation that Yaak Valley included for Dr. Mattson's research appears only tangentially attributable to him.  (*See* Doc. 27 at 8–9) (citing Doc. 20 at 33 (citing AR 04971, a report from Dr. Lance Craighead that references some of Dr. Mattson's research without full discussion).))  The Forest Service argues that Yaak Valley cannot

show that it has standing to challenge the Forest Service's actions or inactions,

even if it may rely on the research from Dr. Mattson included for the first time in

Yaak Valley's combined response and reply.  (Doc. 28 at 6 n.1.)  The Forest

Service does not specifically move to strike the information, however; it merely

notes that Yaak Valley erroneously claims it provided the materials from Dr.

Mattson with its initial summary judgment briefing.  While the parties continue to

dispute standing, they provided helpful clarification at the summary judgment

hearing regarding the evidence submitted with the summary judgment materials

and, in particular, the Mattson declaration and report included by Yaak Valley.

As a starting point, "[j]udicial review of actions brought under the [APA]

limit the scope of review to the administrative record." *All. for the Wild Rockies v.

Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013).  But, "[t]he Ninth Circuit . . .

allows a broader temporal consideration of what compromises the administrative

record in failure-to-act cases." *All. for the Wild Rockies v. Marten*, 2016 WL

7174671, *1 (D. Mont. Oct. 3, 2016).  This broader consideration, however, does

not give the parties carte blanche to include any and all extra-record materials. *Id.*

"Rather, the [APA] limits courts to considering the documents the agency

considered directly or indirectly that fall under a record review exception." *Id.*

These exceptions include the four following circumstances: (1) when the material

is necessary to explain the agency's action, (2) when it appears the agency relied

on materials that were not included in the administrative record, (3) when the

materials are necessary to explain technical or complex matter related to the

agency action, or (4) when the plaintiff makes a strong showing of bad faith or

improper behavior. *Id.* at *2 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432,

1436–38 (9th Cir. 1988), *as amended by* 867 F.2d 1244 (9th Cir. 1989)).

Here, Mattson's declaration and report fall within the second exception.

While a plaintiff cannot claim that a document ought to be considered at summary

judgment merely because the agency referenced that document but did not include

it in the record, a Court may consider material outside the record if that material

was "constructively considered" by the agency. *See Save the Colorado v. United

States Dep't of the Interior*, 517 F. Supp. 3d 890, 898 (D. Ariz. 2021). To show

that the material was "constructively considered," Yaak Valley "must, at the very

least, prove that the referenced materials were relied upon by subordinates or prove

that [the record] relied heavily on the referenced materials that [it] contends should

be included in the administrative record." *Id.* at 899. Yaak Valley has shown that

the Forest Service constructively considered Mattson's report, and Mattson's

declaration provides additional context as to why the report submitted with Yaak

Valley's combined response and reply should be considered.

The Forest Service included the 2020 Biological Opinion on the Effects of

the Kootenai National Forest Land Management Plan on the Grizzly Bear ("2020

BiOp") in its materials in support of its motion for summary judgment. (Doc. 25-3.) The 2020 BiOp includes numerous references to Dr. Mattson's work from 2019. (*See, e.g.*, Doc. 25-3 at 19, 48, 49, 97.) These references indicate that Dr. Mattson's work was "heavily relied on" and therefore constructively considered by the agency in the crafting of the 2020 BiOp. *See Save the Colorado*, 517 F. Supp. 3d at 899. But Dr. Mattson's declaration makes clear that he objects to the 2020 BiOp's interpretation of his research, (*see* Doc. 27-3 at ¶ 5), and he included his 2019 report because it "includes a section that specifically addresses prospective impacts of the [Trail] on grizzly bears in the Yaak region," (*id.* ¶ 23 (noting that the 2020 Biop cited this portion of his report).) Accordingly, because Dr. Mattson's report and declaration fall within the second exception to reviewing the administrative record, the report and declaration are considered in assessing whether Yaak Valley has standing.

### B.    Injury and Cause

To establish standing, a plaintiff must demonstrate three things: (1) the plaintiff suffered an injury in fact that is (2) causally connected and fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable decision in court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In cases such as this, where the alleged injury is procedural in nature, the standing inquiry is slightly relaxed. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160

(9th Cir. 2017). A plaintiff can satisfy the injury-in-fact prong of standing when challenging a procedural injury "by showing (i) the agency violated certain procedural rules, (ii) those rules protect a concrete interest of the plaintiff, and (iii) it is 'reasonably probable' that the challenged action threatens that concrete interest." *Id.* (quoting *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003)). The Forest Service argues that Yaak Valley cannot make this showing. It is wrong. The Forest Service's position also raises a question that was left unanswered at the summary judgment hearing: if Yaak Valley does not have standing to challenge the Forest Service's inaction, what organization or individual would?

The Forest Service's arguments track those it unsuccessfully made previously in this case. In July 2020, the Court determined that Yaak Valley satisfied the injury-in-fact prong of the standing inquiry and denied the Forest Service's motion to dismiss based on a lack of standing. (Doc. 17 at 7.) The Court found that Yaak Valley had sufficiently identified a lack of data and analysis to show a reasonable probability that the lack of a comprehensive plan threatens Yaak Valley's interest in grizzly bear conservation and concluded Yaak Valley had satisfied the redressability requirement of standing. (*Id.*) Now, the Forest Service renews its standing challenge, with its primary argument being that Yaak Valley has failed to provide evidence that there is a lack of information about the Trail's

12

use and that there is a reasonable probability that such a lack of information will result in increased conflict between hikers and bears. (Doc. 22 at 14–21.) Secondarily, the Forest Service argues that the Court's previous order is "in tension with the Ninth Circuit's 'informational standing' jurisprudence." (*Id.* at 14 n.3.)

The Forest Service's current arguments are no more persuasive than its arguments at the motion to dismiss stage. Although the plaintiff carries a different burden at the summary judgment stage, Yaak Valley has met that burden. *See Lujan*, 504 U.S. at 561 (explaining that at the summary judgment stage, a plaintiff "must set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken to be true" to satisfy the requirements of standing). The Forest Service admits it violated certain procedural rules, (Doc. 22 at 10 ("The Forest Service has not yet completed a comprehensive plan for the Trail under the Trails Act.")), and it is settled that Yaak Valley has an interest in grizzly bears, (Doc. 17 at 6). The Forest Service thus rehashes its argument that the lack of a comprehensive plan is not causing Yaak Valley's injury. But Yaak Valley has provided evidence to support its arguments that there is a causal nexus between the lack of a comprehensive plan and its alleged injury. *See* AR 05405–59 (2018 Trail Monitoring Report noting limitations of small collection of use data for planning purposes); AR 06220 (Pacific Crest Trail Association noting that a "recreation survey" should be done to ascertain the

number of hikers on the Trail); AR 04969–72 (Report emphasizing the relationship between human use of the Trail and grizzly encounters); (Doc. 27-1 at 39–43 (Dr. Mattson's 2019 report on the possible effects of hikers on grizzly bears near the Trail)). The Forest Service's repetitious argument that Yaak Valley's alleged injury arises out of the use of the Trail rather than the lack of information about the Trail is a dispute going to the merits of this case and does not negate standing.

The Forest Service also argues that the Court's conclusion regarding procedural injury and standing "is in tension with the Ninth Circuit's 'informational standing' jurisprudence." (Doc. 22 at 14 n.3. (citing *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010).) This argument deserves short shrift. The plaintiffs in *Rey* lacked informational standing because the statutory framework at issue, the Forest Service Decisionmaking and Appeals Reform Act, "grants the public a right to process and to participation. Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se." *Id.* at 1259. By contrast, the National Trails System Act specifically grants the public a right to information per se. *See* 16 U.S.C. § 1244(e). Therefore, *Rey's* informational standing analysis is inapplicable here. In sum, Yaak Valley has standing to challenge the Forest Service's inaction.

## II.    Claim I: Unreasonable Delay

As outlined above, the National Trails System Act mandates a comprehensive plan addressing acquisition, management, development, and use of a trail be submitted to Congress within two fiscal years of a trail's designation. § 1244(e).  Because the Act supplies a specific deadline for performance, that deadline is enforceable under the APA.  *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2006).  Accordingly, Yaak Valley's analysis under *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), is misplaced.  *See Badgley*, 309 F.3d at 1177 n.11 (noting that, where "Congress has specifically provided a deadline for performance by the Service, [] no balancing of factors is required or permitted").

Here, the Forest Service concedes that it has not satisfied the requirement that it submit a comprehensive plan within two years of the Trail's designation, and it acknowledges that "this requirement provides the type of statutory deadline that is enforceable under section 706(1) [of the APA]."  (Doc. 22 at 22–23.)  Thus, at a fundamental level, the parties agree that the Forest Service violated the National Trails System Act by failing to issue a comprehensive plan within two years of the Trail's designation.  They disagree, however, about the proper remedy and the Court's authority to enforce that remedy.  This disagreement is discussed below.

### III.    Claim IV: Unreasonable Reliance

The Forest Service notes that Yaak Valley's "third claim is confusing,"

(Doc. 22 at 23), and its confusion is justified.  It was not immediately clear from its

initial briefing whether Yaak Valley is alleging a claim under the National Trails

System Act through the APA, alleging a claim under the ESA, alleging a claim

under the National Forest Management Act ("NFMA"), or all three.  (*See* Doc. 20

at 24–28.)  However, in its response and at the summary judgment hearing, Yaak

Valley plainly asserted that it is not bringing claims under either the ESA or

NFMA, (Doc. 27 at 19), and this posture is consistent with Yaak Valley's initial

complaint, (Doc. 1 at 20–24).  Thus, Yaak Valley's fourth claim for relief may be

best understood as an argument that the Forest Service acted in violation of the

APA because it relied on the Kootenai Plan in lieu of a comprehensive plan as

required under the National Trails System Act.  (*Id.* at 20; *see also* Doc. 20 at 25–

26.)  According to Yaak Valley, the Forest Service cannot rely on the Kootenai

Plan even while simultaneously working on the comprehensive plan because a

forest plan does not necessarily include all the information that required under

§ 1244(e) of the National Trails System Act.  The Forest Service responds that

Yaak Valley has failed to identify any "final agency action" that could give rise to

a claim under the APA.  Both parties are partially correct.

## A.    Agency Action

Ordinarily, under the general review provisions of the APA, "the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990).  However, "[j]udicial review of an agency's actions under § 706(1) for alleged delay has been deemed an exception to the 'final agency decision' requirement." *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997).  "Under this exception, the court is examining an agency's actions *prior to a final agency decision* for purposes of measuring agency delay." *Id.* Thus, in cases where the alleged injury is unreasonable delay, such as it is here, there will necessarily be no final agency action.[2]  But the final agency action exception is somewhat complicated here, where the alleged underlying injury is the Forest Service's failure to submit a comprehensive plan—which violates § 706(1)—and Yaak Valley seems to argue that underlying injury gave rise to another injury: the reliance on the Kootenai Plan in place of a comprehensive plan, which Yaak Valley argues violates § 706(2).  Yaak Valley is partially correct.

While not unheard of, it is rare for a plaintiff to be able to challenge an agency's actions under both §§ 706(1) and 706(2).  *See Al Otro Lado, Inc. v.*

---

[2] The Forest Service's initial summary judgment brief recognizes this principle: "In failure-to-act cases, such as this one . . . judicial 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.'" (Doc. 22 at 18 n.5 (quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).)

*Nielsen*, 327 F. Supp. 3d 1284, 1318–22 (S.D. Cal. 2018).  This makes sense given that a claim under § 706(1) results when agency action is unreasonably delayed or withheld, which generally means there is no "final action" to challenge.  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) ("For an agency action to be considered 'final,'" the action must do two things: (1) "mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow") (internal quotation marks omitted).  That means, in this case, Yaak Valley's claim that the Forest Service's reliance on the Kootenai Plan was arbitrary and capricious, in violation of § 706(2), fails because the Forest Service has taken no "final action."   But this reliance on the Kootenai Plan contributed to the Forest Service's delay in issuing a comprehensive plan, which is a challenge that properly falls under § 706(1), not § 706(2).  Yaak Valley therefore succeeds on its § 706(1) claim concerning the Kootenai Plan.

**B.     Unreasonable Reliance**

Yaak Valley points to a single exhibit attached to its Complaint as evidence of the Forest Service's unreasonable reliance on the Kootenai Plan.  The exhibit is a July 8, 2019 letter from Cheryl Probert, the then-Forest Supervisor, that states, in relevant part:

> Currently, the Kootenai Forest Plan guides our management of the congressionally   designated   [Pacific   Northwest   Trail].      The

18

comprehensive planning process for the [Trail] allows the [Kootenai National Forest] to continue to carry out its management responsibilities along the [Trail] (signing maintenance, or site-specific projects) concurrently.

The Forest Service is working to renew the charter for an advisory council for the [Trail]. When the advisory council is reestablished, the Forest Service will meet with this group to consult on the rights-of-way as part of the broader planning effort to prepare the legislatively required comprehensive plan for the [Trail].

(Doc. 1-3 at 1.)

Despite Yaak Valley's sparse citations to the record, the Forest Service does not dispute that it is currently relying on the Kootenai Plan. But, at the summary judgment hearing, the Forest Service emphasized that it does not take the position that the requirements of a forest plan are interchangeable with the requirements for a comprehensive plan. Rather, the Forest Service tried to contextualize its reliance, arguing that Probert's "statement merely notes the unremarkable proposition that projects on the Kootenai National Forest, including those related to Trail management, w[ill] be conducted under the Forest Plan." (Doc. 28 at 14.) The Forest Service also reiterated its mistaken position that the Court cannot review the Forest Service's decision to rely on the Kootenai Plan because Yaak Valley has not identified "any particular final agency action as required by the APA." (*Id.* at 14–15.) As discussed above, the Court may consider whether the Forest Service's reliance on the Kootenai Plan violates § 706(1) because the reliance is part and parcel of the Forest Service's unreasonable delay.

19

Under the National Trails System Act, a comprehensive plan must address "the acquisition, management, development, and use of the trail." 16 U.S.C. § 1244(e). The comprehensive plan must include specific management objectives and practices, such as "the identification of all significant natural, historical, and cultural resources to be preserved . . ., details of anticipated cooperative agreements to be consummated with other entities, and an identified carrying capacity of the trail and a plan for its implementation." § 1244(e)(1). The comprehensive plan must also address the acquisition or protection, "by fiscal year, for all lands to be acquired by fee title or lesser interest, along with detailed explanation of anticipated necessary cooperative agreements for any lands not to be acquired," and it must address "general and site-specific development plans including anticipated costs." § 1244(e)(2), (3).

By contrast, under NFMA, a forest plan must "include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness," and it must "determine forest management systems, harvesting levels, and procedures . . . and the availability of lands and their suitability for resource management." 16 U.S.C. § 1604(e). There is no requirement that a forest plan address the same components that must be addressed by a comprehensive plan. Indeed, the Kootenai Plan does not reference carrying capacity or land acquisition. *See* AR 03997–04167 (2015 Land Management Plan for the Kootenai National

20

Forest). Consequently, the Forest Service's reliance on the Kootenai Plan is a key part of the unreasonable delay in the Forest Service's failure to timely promulgate a comprehensive plan in violation of § 706(1) of the APA.

## IV.  Injunctive Relief

The APA provides relief for a failure to act in § 706(1): "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Norton*, 542 U.S. at 62. This means that "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing it *how* to act." *Id.* at 64 (internal quotation marks omitted). But, as the Forest Service notes, "a statutory violation does not always lead to the automatic issuance of an injunction." *Badgley*, 309 F.3d at 1177. Rather, where a federal agency violates a statute, injunctive relief is appropriate if such "an injunction is necessary to effectuate the congressional purpose behind the statute." *Id.* Thus, since the Forest Service concedes it has not yet issued a comprehensive plan for the Trail, as required by statute, the probative question here is whether an injunction is necessary to effectuate the purpose behind § 1244(e). It is.

First, the Forest Service's argument that the Court need not impose a deadline to submit a comprehensive plan to Congress because such an injunction would not further the congressional purpose behind the National Trails System Act

21

is unavailing.  The injunctive relief must further the congressional purpose behind *the statute*, not the National Trails System Act as a whole, and so the Forest Service's interpretation is overly broad.  *See Badgley*, 309 F.3d at 1177.  The statute, § 1244(e), plainly expresses that Congress intended a comprehensive plan to issue within two years of a trail's designation.  Therefore, imposing a deadline for the completion of a comprehensive plan for the Trail would effectuate Congress's intent that plans be supplied for designated trails in a timely manner.

Also unavailing is the Forest Service's argument that imposing a deadline on it to submit the comprehensive plan for the Trail would be "unreasonable."  Citing the Blanchard Declaration, (Doc. 24), the Forest Service claims it "is committed to completing a comprehensive plan as soon as practicable," and important preparation work for a plan has already been completed, (Doc. 22 at 27).  The Forest Service also provided an overview of the comprehensive plan drafting process at the summary judgment hearing, indicating that the Forest Service was making strides toward completion of the comprehensive plan.  Further, Yaak Valley's expressed agreement with the Forest Service's proposed deadline obviates the Forest Service's concerns that Yaak Valley's proposed deadline of December 31, 2021 is "unreasonable in light of the complexity of developing a comprehensive plan." (*Id.* at 29–30.)  And, as explained above, the inquiry is whether injunctive relief is necessary to effectuate the purpose of the statute, not

whether such relief would burden the agency.  If the Forest Service has qualms about the statutory timeline, that is a complaint aimed at Congress, and Yaak Valley's request to enforce Congress's mandated timeline is not unreasonable. Accordingly, the Forest Service shall submit a comprehensive plan for the Trail to Congress by December 31, 2023.

Yaak Valley seeks additional injunctive relief, asking the Court to order the Forest Service to engage in Section 7 consultation for any site-specific projects related to the Trail.[3]  (Doc. 20 at 26–28.)  It further argues the Court should require the Forest Service to: (1) inform the public of its statutory and regulatory failures to act; (2) inform the public of the specific risks facing bears in the Cabinet Yaak Ecosystem as a result of increased human use of the portion of the Trail in the Yaak; (3) provide maps identifying the Cabinet Yaak Ecosystem bears' designated core habitats within the bear management units the Trail bisects; (4) request that the public avoid using "spur trails" or designated sections of "side trails" that are within the bears' critical habitat; and (5) request that the Forest Service's affiliate partner, the Pacific Northwest Trails Association, do the same.  (*Id.* at 35.)  Yaak Valley also requests that the Court "[o]rder the Forest Service to initiate[ ] ESA

---

[3] The Forest Service is correct that, insofar as Yaak Valley presents its request for an injunction as a "claim" for relief, it is mistaken.  (Doc. 22 at 26 (citing *Cox Commc'ns PCS v. City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.").)

23

Section 7 consultation with the Fish and Wildlife [Service] in development of [a] comprehensive management plan" and "[o]rder the Forest Service to conduct full NEPA analysis in conjunction with the development of [a] comprehensive management plan." (*Id.* at 35–36.)  But this requested relief falls outside the scope of § 706(1), as outlined above.  Accordingly, this request for additional relief is denied.

**CONCLUSION**

Based on the forgoing, IT IS ORDERED that Yaak Valley's motion for summary judgment, (Doc. 19), is GRANTED IN PART and DENIED IN PART. It is GRANTED on Yaak Valley's Claims I and IV and to the extent Yaak Valley seeks a date certain for the comprehensive plan.  The Forest Service's cross-motion for summary judgment, (Doc. 22), is GRANTED as to Yaak Valley's request for additional injunctive relief (part of Claim V) and DENIED in all other respects. This matter is REMANDED to the agency.  The Forest Service shall submit a comprehensive plan to Congress by December 31, 2023.

IT IS FURTHER ORDERED that the Clerk is directed to enter judgment consistent with this order and close the case.

DATED this 28th day of September, 2021.

Donald W. Molloy, District Judge
United States District Court

24